UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:06CV01308 |
| THE DI DIS CORPORATION a/k/a The DiDis Corporation | ) ) ) ) | Judge: Ricardo M. Urbina Deck Type: Labor/ERISA (non-employment) |
| and | ) ) | |
| NICHOLAS DISTANTE | ) ) ) | |
| Defendants. | ) | |

## LOCAL CIVIL RULE 16.3 JOINT REPORT

Pursuant to Local Rule 16.3 and Federal Rules of Civil Procedure 26(f), the parties hereby submit the following Joint Conference Report and Discovery Plan.

**A.    Conferences and Participants.**

A meeting was held on June 12, 2007, at 9:00 a.m. via teleconference and was attended by:

> Jerome A. Flanagan, Counsel for Plaintiff
>
> C. Bruce Lawrence and Michael J. Lichtenstein, Counsel for Defendants

**Plaintiffs' Statement of the Case**

The Pension Fund alleges that Defendants agreed to abide by: (i) the terms and conditions of its collective bargaining agreement(s) with all local labor unions and district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC, includes without limitation its collective bargaining agreements with International Union of

Painters and Allied Trades, Local Union 150 ("Local 150") and International Union of Painters and Allied Trades District Council No. 4 ("D.C. 4"); and (ii) the terms of the agreement and declaration of trust of the Pension Fund and the Rules and Regulations of the Pension Fund. Under the terms of the collective bargaining agreements, trust agreement, and rules and regulations and pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Company was required, among other things, to submit a remittance report detailing its employees performing bargaining unit work and the number of hours they worked and to remit the appropriate amount of fringe benefit contributions.

Based on information currently available to the Pension Fund, the Company has failed to remit all required contributions and, thus, owes the Pension Fund at least $177,973.66, consisting of fringe benefit contributions in the amount of $71,491.65, interest in the amount of $8,109.66 (through 6/15/06), liquidated damages in the amount of $73,531.22, late charges in the amount of $4,740.36 and attorneys' fees and costs in the amount of $20,100.77 (through 5/31/07).

On March 14, 2006, Nick Distante ("Distante"), as President of Company, signed a Promissory Note ("Note") and Personal Guarantee ("Guarantee") for payment of Company's delinquent contributions to the Fund totaling $11,879.17. Distante also personally guaranteed payment of the Company's ongoing contribution obligations to the Pension Fund for the period beginning March 14, 2006 until the past debt was paid in full. The prior debt has not been paid and the Company owes current contributions through at least June 2006. Under the Guarantee Distante is personally liable for all amounts owed. Plaintiffs also claim that Distante is personally liable under ERISA because, as an individual exercising control or authority over plan assets, he breached a fiduciary duty to the Pension Fund. See, ITPE Pension Fund v. Hall, 334 F.3d 1011 (11th Cir. 2003); Laborers Combined Pension Fund of W. Pa v. Parkins, 2002 U.S.

Dist. LEXIS 20035 (W.D.Pa. 2002).

### Defendant's Statement of the Case

The Didis Corporation, a New York State entity, conducted a unionized paint contracting business in the Rochester, NY area. It's President and sole officer was Nicholas Distante. In the spring of 2006, at a time that Didis owed pension contributions to the Plaintiff, employee(s) of the International Union of Painters and Allied Trades contacted Owners and Contractors for whom Didis was working, and urged them to make no further payments to Didis, because Didis owed the union contributions. These Owners and Contractors then stopped making payments of hundreds of thousands of dollars that were contractually owing to Didis. This immediately forced Didis to discontinue business operations as a result of a lack of funds. This action by the union to interfere with Didis's contractual relations denied Didis present and future profits.

Distante had given the Plaintiff a personal guarantee of an $11,879.17 payment that was currently due. The Plaintiff now contends that this has created personal liability in at least the amount of $144,851.00, which Distante denies. Further, Plaintiff alleges that Distante has breached a fiduciary duty to the Plaintiff. Distante denies that ERISA creates any such fiduciary duty on an officer of Didis.

B. **Discovery Plan.**

    (1) **Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the court that discovery or other matters should await a decision in the motion.**

        At this juncture, the parties believe that motions for partial summary judgment will be filed that would dispose of some of the claims and counterclaims; however, no dispositive motions have been filed at this time.

    (2) **The date by which any other parties shall be joined or the pleadings**

amended, and whether some or all of the factual and legal arguments can be agreed upon or removed.

Neither party plans to add additional parties or to amend the pleadings. The parties will cooperate to narrow the factual and legal issues.

(3) **Whether the case should be assigned to a magistrate judge for all purposes, including trial.**

The Parties consent to the case being assigned to a magistrate for discovery purposes only.

(4) **Whether there is a realistic possibility of settling the case.**

The parties are currently engaged in good faith settlement negotiations.

(5) **Whether the case should benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients.**

The parties do not believe ADR will be helpful in this case.

(6) **Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross motions, oppositions, and replies; and proposed date for decision in the motions.**

The date for filing dispositive motions will be December 15, 2007.

(7) **Whether the parties should stipulate to dispense with the initial disclosures required by Rule 26(a)(1) F. R. Civ. P., and if not, what if any change should be made in the scope, form or timing of those disclosures.**

The parties will exchange information pursuant to Fed. R. Civ. P. 26(a) on or

before July 16, 2007.

(8) **The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for completion of all discovery; including answers to interrogatories, document production, requests for admissions, and depositions.**

All discovery will be completed by November 15, 2007. The parties agree to a limit of 25 interrogatories. The Parties request that each side be allowed to take no more than ten (10) non-expert depositions.

(9) **Whether the requirement of exchange of expert witness reports and information pursuant to Rule 26(a)(2), F. R. Civ. P. should be modified, and whether and when depositions of experts should occur.**

The Plaintiffs shall disclose any expert witness by September 15, 2007 and the Defendants shall disclose any expert witness by October 15, 2007. Any rebuttal experts shall be disclosed by November 15, 2007. The parties will agree on a schedule for deposing such experts.

(10) **In class actions, appropriate procedures for dealing with Rule 23 proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision.**

Fed. R. Civ. P. 23 does not apply.

(11) **Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

The parties do not believe there is any need for the trial to be bifurcated.

(12) **The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

The parties request that a post-discovery conference be scheduled for January 2, 2008 or such date thereafter as the Court's schedule permits.

(13) **Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial**

**conference from 30 to 60 days after that conference.**

The parties request that a trial date be set at the post-discovery conference.

>Respectfully submitted,
>
>**JENNINGS SIGMOND, P.C.**

Dated: June 18, 2007     By:     /s/ Sanford G. Rosenthal
>Sanford G. Rosenthal (Bar No. 478737)
>510 Walnut Street, 16th Floor
>Philadelphia, PA 19106
>Direct Dial: 215.351.0611
>Fax: 215.922.3524
>Attorney for Plaintiffs

>**SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.**

Dated: June 18, 2007     By:     /s/ Michael J. Lichtenstein
>Michael J. Lichtenstein (Bar No. 419302)
>11921 Rockville Pike, Suite 300
>Rockville, Maryland 20852-2743
>(301) 230-5231
>Attorney for Defendants

C. Bruce Lawrence, Esquire
Boylan, Brown, Code, Vigdor & Wilson, LLP
2400 Chase Square
Rochester, New York 14604
TEL: 585-232-5300 x 256
Attorney for Defendants